## ANDERSON v. DRAKE.

Water standing in a wellhole, which is fed by a subterranean spring, is not "surface water" before it leaves the well, and the owner could not divert it to another's injury, and, even if the well was fed by seepage of surface water, it lost its character as surface water when it reached the well, and cannot thereafter be diverted by artificial means to another's injury.

(Opinion filed, Nov. 10, 1909.)

Appeal from Circuit Court, Roberts County. Hon. J. H. McCoy, Judge.

Action by Adolph Anderson against E. R. Drake. From a judgment for defendant and an order denying a new trial, plaintiff appeals. Reversed.

*J. J. Batterton* and *Thad L. Fuller,* for appellant.

Where two parcels of land belonging to different owners are adjacent to each other and one parcel lies lower than the other, the lower one owes a servitude to the upper, to receive the water which *naturally* runs from it, provided the *industy of man* has not been used to create the servitude. Martin v. Jett, 12 La. 501; Lattimore v. Davis, 14 La. 161; Dalahoussaye v. Judice, 13 La. Ann. 587; Barrow v. Landry, 15 La. Ann. 681; Kauffman v. Griesemer, 26 Pa. St. 407; Miller v. Laubach, 47 Pa. St. 154; Livingston v. McDonald, 21 Iowa 160; Adams v. Walker, 34 Conn. 466; McCormick v. R. R. Co., 70 Mo. 359; Shane v. R. R. Co., 71 Mo 237; Templeton v. Voshloe, 72 Ind. 134. A land owner has a right to construct a drain to carry the water from his land in its natural and usual course onto or over land of another, unless the quantity thrown upon such other's land is materially and unduly increased to his damage. Saker v. Machoves, 110, 111, 1055; Carroll v. Rye, Typ. 101 N. W. 894; Shaw v. Ward, 111 N. W. 671.

*Frank McNulty,* for respondent.

Surface water is that which is diffused over the surface of the ground derived from falling rains and melting snows, and continues to be such until it reaches some well-defined channel in which it is accustomed to and does flow with other waters, whether derived from the surface or *springs,* and then it becomes the running water of a stream and ceases to be surface water. Crawford v. Rambo, 44 Ohio St. 287.

WHITING, J. This action comes before this court upon an appeal from the judgment of the trial court and from the order of such court denying a new trial herein. The action was tried in the lower court before a judge without a jury, and the said trial court at the close of the plaintiff's testimony, upon motion of the defendant, dismissed the complaint therein and

filed its findings of fact and conclusions of law favorable to said defendant, refusing certain findings asked for by the appellant. Upon this appeal the plaintiff and appellant assigns as error certain rulings of the trial court in rejection of evidence; but the assignment most relied upon is the one going to the question of the sufficiency of the evidence to sustain certain findings of fact made by the court, and for the purpose of this appeal it will only be necessary to consider this feature of the case, together with the question of whether or not, if the findings of fact are wrong, their correction would necessitate a change in the conclusion of law and therefore in the judgment.

This action was brought to restrain the defendant from continuing the maintenance of a certain ditch or trench, through which it is claimed by the plaintiff a continuous stream of water is discharged upon and injuring the plaintiff's land. There being no question raised as to the sufficiency of the pleadings, it only becomes necessary to consider the facts as shown by the evidence. It appears undisputed: That the defendant is the owner of the northwest quarter of a certain section of land; that the plaintiff is the owner of the southeast quarter of said section; that a third party owns the southwest quarter of said section; that running in a somewhat easterly and westerly direction along the center line of said section is a ridge which slopes to the south having on its southern slope some depressions or drains, by which the rainfall and water from melting snow is carried to the lower land to the south; that one of these depressions or draws is situated near the southeast corner of defendant's land, and this depression slopes rapidly toward the south extending onto the land of the third party, above referred to; that in the draw just mentioned, and near the southeast corner of said northwest quarter, the defendant in the year 1900 sunk a wellhole, and in 1903, for the purpose of watering his stock without drawing water from said wellhole, the defendant dug a small basin near said well and south of it, and connected this basin by a ditch with the said well, cutting the side of said well to the depth of two or three feet, and by so doing allowing the standing water in said well to flow into said basin. It appears without dispute that, at the

southern end of this draw upon the land of this third party, this natural drainage channel spreads, and the bottom thereof, be- coming practically level and having a very slight slope, forms a natural depression in the form of a shallow swale extending in an easterly direction across the plaintiff's land, and that near the southeast corner of plaintiffs land this swale opens into a water course in the form of a flowing river. It also appears that near the eastern side of plaintiffs land, at one place the swale has become somewhat filled so that the bottom thereof is a few inches higher than the bottom of the swale further west, thus causing a shallow pond hole from which the water cannot entirely drain. It is claimed by the plaintiff that the well dug by the defendant opens up a spring which feeds such well, and that the spring filled said wellhole to within about three feet of the natural sur- face of the land surrounding the well. Plaintiff claims that prior to the sinking of said well, and also after the same was sunk, and down to the time when the ditch leading from said well was dug, no water ever flowed from such well onto his land except the water coming down through such draw from rainfall or from melting snow, and that such water as came from such rain and snow sunk into the ground, leaving plaintiff's land all tillable; and plaintiff claims that, ever since the ditch was dug from said well allowing the water to run into the pond above mentioned, such pond has overflowed at all times of the year, causing a small stream of water to run down across the southwest quarter and onto plaintiff's land, spreading over the swale on said land, and rendering said land unfit for farming purposes of any kind.

We are unable to find any conflict in the testimony of plain- tiff's witnesses, or anything to indicate that their testimony was not truthful. The trial court, among other findings, found that the spring above referred to was fed by surface water percolat- ing through the soil, and that said spring or well was not main- tained in such a way as to collect water and discharge any quan- tity of water upon the land of the plaintiff, and the court found that the water was allowed to escape from said well and flow the natural course of drainage leading from the place where said spring was located, and further found that there was a natural

drainage toward and in the direction of plaintiff's land, and that the water from said well or spring flows from the earth according to the course of nature, and runs in the natural drainage channel prepared by nature for removing said water. Plaintiff claims that these findings are not supported by the evidence, but that the evidence shows, and the court should have found, that the water would not in the natural condition of the land, or as the well was first maintained, ever overflow onto plaintiff's land, and that the court should have found that the only water, which according to nature ever flowed on plaintiff's land, was the surface water from rain and melted snow, and that such draw leading down to plaintiff's land, and in which said well is located, was, prior to the digging of the ditch in question, at all times dry, except when there was water therein from rain or melting snow, and that such water from rain or melting snow was absorbed by the soil and evaporated and did not prevent the cultivation and harvesting of crops on any of plaintiff's land. Plaintiff contends further, that the court should have found that the ditch in question was dug for the sole benefit of defendant, so that he would not be compelled to lift or draw water for his stock, and that, as a result of the digging of such ditch, a continuous stream of water runs on plaintiff's land, rendering a portion wholly unfit for cultivation.

A careful reading of the evidence shows clearly the facts as contended for by the plaintiff, so that there was error in the findings as made by the court. It seems, however, to be the theory of the respondent that, even under the facts as claimed by the plaintiff, the plaintiff would not be entitled to the relief prayed for; it being the contention of the respondent that he had the right, for the purpose of using said water for his stock, to ditch the same from said well or spring into the drinking hole, even if, by so doing, water escaped onto plaintiff's land causing damage. Respondent, in his brief, takes the position that the water coming from this spring was surface water, and that he had a right to handle the same as such. He cites authorities holding that water from springs spreading over land is and may be treated the same as surface water. While we agree that water

which has flowed out of a spring and spread over the land may
become for all purposes, in the eye of the law, "surface water,"
yet we cannot agree that such water, standing in a spring or
wellhole fed by such spring, is "surface water." There can be
no question but what such water is no more surface water prior
to the time it leaves the spring or well, than it was surface water
when it was flowing in a channel, or percolating through the soil,
beneath the surface of the earth, and certainly no person can have
a right to convert water, which was not surface water, into sur-
face water, and then, as against third parties, claim the right to
handle such water as though it had originally been surface water.

Even if the water in question were considered as surface
water and subject to all rules of law relating thereto, yet under
the authorities there would be grave doubts as to the rights of
defendant to dig a ditch through which the same could flow onto
the land of others, when such water would not otherwise have
reached such other parties' land. It is impossible to harmonize
the authorities upon this point. In 19 L. R. A. (N. S.) 167, we
find the case of Manteufel v. Wetzel, a Wisconsin case (133 Wis.
619, 114 N. W. 91), holding that an upper landowner may collect
in a ditch, following the usual surface drainage, the surface water
which spreads over the surface, and by so doing hasten the flow of
such water onto the land of the proprietor below. Following this
case is to be found a very complete note upon this question; the
authorities therein cited supporting the holding of the Wisconsin
case, but apparently with this limitation: That the owner of the
higher land has no right to remove natural barriers, and let onto
the lower land waters which would not otherwise naturally flow
in that direction. Following this case is also an extensive note
on the right to drain ponds and marshes where such ponds or
marshes are fed by surface water, and there appears to be, un-
der the decisions noted, a conflict as to whether or not one can
deepen the natural drain from the pond and thus allow water to
escape therefrom which would not otherwise flow out. In the
case of Krupke v. Stockard, 103 Minn. 349, 115 N. W. 175, it
was held that, where surface water had accumulated in a pond
permanent in its character, the water therein lost its character as

surface water and could not be drained out of such pond onto the lower land. The theory upon which those courts which hold that a ditch may be dug draining ponds, whose waters would not otherwise flow out, is that it may be done for the purpose of husbandry where no great injury is sustained by the servient estate.

This same question of drainage of marshes and ponds was passed upon in the case of Davis v. Fry, 14 Okl. 340, 78 Pac. 180, 69 L. R. A. 460, 2 Am. & Eng. Ann. Cas. 193, wherein the court takes the position that surface water collecting in a natural basin or depression, and escaping therefrom only by percolation or evaporation, and forming a lake or pond permanent, loses the character of surface water and cannot be drained onto the lower estate, thus supporting directly the position of the Minnesota case above mentioned, and sustains the rule that in any case, to allow such drainage, the water must be, strictly speaking, "surface water." In this case the court quotes with approval the charge of the trial court which was given by the Ohio court in the case of Butler v. Peck, 16 Ohio St. 336 (88 Am. Dec. 452), as follows: "The sole question made by that part of the charge to the jury which is complained of is this: Whether an owner of land having upon it a marshy sink or basin, as to a considerable portion of the water which collects within it has no natural outlet, may lawfully throw such water by artificial drains upon the land of an adjacent properietor. We are clear that no such right exists. It would sanction the creation by artificial means of a servitude which nature has denied. The natural easement arises out of the relative altitude of adjacent surfaces as nature made them, and these altitudes may not be artificially changed to the damage of an adjacent proprietor; and it makes no difference that, in the hypothetical case on which the charge of the court below complained of is based, in times of high water, a portion of the water of the basin would overflow along a natural swale to and upon the lands of the plaintiffs below, for as to those waters which naturally could not surmount nor penetrate the rim of the basin, but were compelled to pass off by evaporation or remain where they were, the case is the same as if the basin had no outlet."

We are therefore satisfied that, under the authorities, even in the case of water which once was surface water, if it flows into a basin forming a pond or other body of water permanent in its character, such pond cannot be drained to the deteriment of the servient estate by digging a ditch through the natural channel emptying such pond, where without such ditch the natural drainage channel would not have taken out the water from the said pond. We do not wish to be understood as holding that ponds or sloughs of a temporary nature may not be drained for the purposes of husbandry, or as holding that the waters in sloughs which would naturally seep and flow in a fixed direction could not be hastened in such direction by running the same in a ditch, even where by so doing more water would be discharged on the servient estate than would have been without such ditch owing to the fact of less evaporation; but what we do hold is that no matter whether we consider this well as being fed by seepage of surface water, or whether it is fed through the spring from subterranean sources, yet in one case the water when it reaches the well loses its character as surface water, and in the other case it ceases to be surface water long before it reached the well, and, in either case, not being surafce water, the defendant would have no right whatever by artificial means to discharge the same upon the land of other parties to their damage.

We are therefore fully of the opinion that the learned trial court erred in its findings of fact, and that, under the facts as they appear by the undisputed evidence, the conclusions of the trial court are wrong.

It is therefore ordered that the judgment of the trial court and order denying a new trial be, and the same are, hereby reversed.

McCOY, J., taking no part in the decision.