1999 SD 74

James HENDRICKSON and Farol Hendrickson, Plaintiffs and Appellees,

v.

WAGNERS, INC., Paul W. Wagner a/k/a Bill Wagner, and Terry Wagner, Defendants and Appellants,

and

Loren Wagner, Doris Ruth Hoffman, Harold D. Hoffman, Wilma Ann Dwight, and Edward Ivan Torguson, Defendants.

Nos. 20636, 20650.

Supreme Court of South Dakota.

Considered on Briefs April 26, 1999.

Decided June 23, 1999.

Richard A. Sommers of Bantz, Gosch, Cremer, Peterson and Sommers, Aberdeen, for plaintiffs and appellees.

Frank E. Denholm of Denholm and Glover, Brookings, for defendants and appellant.

GILBERTSON, Justice

[¶ 1.] Servient landowners brought suit against dominant leaseholders for intentionally draining water onto their land resulting in crop loss. After a trial to the court, the servient landowners were awarded damages for three of the years at issue along with pre-judgment interest. However, the trial court refused to grant the servient landowners an injunction against future drainage. The dominant leaseholders appeal. We affirm. The servient landowners filed a notice of review upon which we reverse.

## FACTS AND PROCEDURE

[¶ 2.] James and Farol Hendrickson (Hendricksons) own property in Day County, South Dakota. Wagners, Inc.[1] leases property adjacent to the Hendricksons' land. Wagners' property is higher than Hendricksons' and thus for drainage purposes, Hendricksons' land is servient to Wagners.

[¶ 3.] In the 1970s, the Wagners approached Albin Stromseth (Stromseth), a local contractor. They offered to hire him to construct ditches for the purpose of draining wetlands located on the leased land. Stromseth refused the offer as Hendricksons would not agree to the construction because the water would drain onto their property. Notwithstanding, in 1976 Wagners engaged in some ditching activity on the leased land using their own equipment. As a result, water that would have normally collected in what is known as wetlands or potholes on Wagners' land, was cast onto Hendricksons' land. The water came to rest in a wetland on Hendricksons' land. Due to the additional water, Hendricksons' land began to flood. The area where the unnatural amount of water collected is known as Field 3.

[¶ 4.] Hendricksons brought suit to enjoin Wagners from draining surface water onto their land and for damages for loss of growing crops. Hendricksons claimed they suffered crop losses in Field 3 in 1978, 1980, 1986, 1988 and 1991–1996. During the years 1986 and 1991–1996 the area experienced unusually high precipitation. Wagners denied any intentional conduct and claimed Hendricksons channeled, ditched and drained water in a manner to create a permanent catch in the watershed basin and this contributed to their damages.

[¶ 5.] The trial court, when comparing the years Hendricksons experienced crop loss to the area's annual precipitation, concluded Hendricksons were not entitled to damages for 1986 and 1991–1996, as they

---

1. The Hendricksons brought suit against Wagners, Inc.; Paul Wagner III, a.k.a. Bill Wagner; Theoron J. Wagner, a.k.a. Terry Wagner; Doris Ruth Hoffman; Wilma Ann Dwight; and Edward Ivan Torguson. Collectively they will be referred to as Wagners. Bill and Terry Wagner lease the land at issue from the other named defendants. The other named defendants did not participate in the trial and agreed to be bound by the decision of the trial court.

would have suffered crop loss regardless of Wagners' ditching. Further, expert testimony indicated the land leased by Wagners was only a fraction of the total watershed area draining over Field 3. Of all this land only a portion of it leased by Wagner contained wetlands. The wetlands were small in area and held relatively little precipitation compared to what drained and collected on Field 3 from the great watershed area. Also, the continuous farming practices on Wagners' land would have the gradual effect of flattening the land and therefore contributing to Wagners' land losing its wetland character. This also contributed to the decreased retention of surface water in the small wetlands. Therefore, the court found damages were only appropriate for the years 1978, 1980 and 1988. Hendricksons had shown damages for 1978 in the amount of $2,280.00, for 1980 in the amount of $3,350.00 and for 1988 in the amount of $680.00. The court awarded these amounts along with prejudgment interest.

[¶ 6.] Addressing the prayer for injunctive relief, the trial court held Hendricksons failed to demonstrate to the court's satisfaction injunctive relief was appropriate. The court was not convinced anyone could, with any reasonable degree of certainty, ascertain the previous condition of the land, making it difficult, in its opinion, to grant injunctive relief to return it to that state. Moreover, it held there was an absence of testimony regarding what it would cost to survey the land and restore it. Considering these factors, together with the amount of judicial oversight needed, the fact liability was such a close call and the fact the Hendricksons will still be able to farm in years of average precipitation, the trial court denied the injunction.

[¶ 7.] Wagners raise three issues, only one of which merits examination:

1. Whether the trial court erred in finding Wagners responsible for excessive surface water on Hendricksons' property, which resulted when

they constructed various drainage ditches.

Hendricksons filed notice of review raising two issues, one of which we deem it appropriate to address:

2. Whether the trial court erred in not granting Hendricksons a permanent injunction.

## ANALYSIS AND DECISION

[¶ 8.] **1. Whether the trial court erred in finding Wagners responsible for excessive surface water on Hendricksons' property, which resulted when they constructed various drainage ditches.**

[¶ 9.] The trial court found Wagners, using their own equipment, constructed drainage ditches on their property in 1976. Hendricksons were damaged because water drained from these unnatural ditches onto their property. The trial court held Wagners responsible for Hendricksons' crop loss due to the flooded lands. Wagners claim they did not create any artificial drainage and did not do anything other than exercise reasonable and prudent care of a natural waterway through the existing depressions in the land.

Our standard of review of the trial court's findings of fact is under a clearly erroneous standard. *Jasper v. Smith*, 540 N.W.2d 399, 401 (S.D.1995); *Muhlenkort v. Union County Land Trust*, 530 N.W.2d 658, 660 (S.D.1995). The trial court's findings will not be disturbed unless the court is "firmly and definitely convinced a mistake has been made." *Jasper*, 540 N.W.2d at 401. Conclusions of law, on the other hand, are reviewed under a de novo standard, giving no deference to the trial court's conclusions of law. *Id.* Questions of law, including statutory construction, we review de novo. *West Two Rivers Ranch v. Pennington County*, 1996 SD 70, ¶ 6, 549 N.W.2d 683, 685 (1996).

*Engelhart v. Kramer,* 1997 SD 124, ¶ 8, 570 N.W.2d 550, 552 (citation omitted).

[¶ 10.] For rural surface water drainage, South Dakota follows the civil law rule. *Knodel v. Kassel Township,* 1998 SD 73, ¶ 10, 581 N.W.2d 504, 507. This rule "burdens lower agricultural property with an easement under which the dominant, or upper property owner may reasonably discharge surface water over the servient estate through natural watercourses." *Id.* (Internal punctuation and quotation omitted) (citing *Winterton v. Elverson,* 389 N.W.2d 633, 635 (S.D.1986); *Gross v. Conn. Mut. Life Ins. Co.,* 361 N.W.2d 259, 266 (S.D.1985); *Johnson v. Metropolitan Life Ins. Co.,* 71 S.D. 155, 157–58, 22 N.W.2d 737, 739; *Thompson v. Andrews,* 39 S.D. 477, 485–86, 165 N.W. 9, 12 (1917)). This rule permits the discharge of surface water *over* but not *onto* the land of another. *Id.* (Citation omitted). This Court first considered this question in 1909 in the case *Anderson v. Drake,* 24 S.D. 216, 123 N.W. 673 (1909). In that case we found that

> if [water] flows into a basin forming a pond or other body of water permanent in its character, such pond cannot be drained to the detriment of the servient estate by digging a ditch through the natural channel emptying such pond, where without such ditch the natural drainage channel would not have taken out the water from the said pond.

*Anderson,* 24 S.D. at 223, 123 N.W. at 675. A dominant estate holder has no right to discharge surface water by artificial means onto the property of another. *Id.*

[¶ 11.] The civil law rules regarding rural surface water drainage have been codified in SDCL 46A–10A–20.

> [A]ny rural land, which drains onto other rural land, has a right to continue such drainage i f:
>
> * * *
>
> (2) The land being drained is used in a reasonable manner;

(3) The drainage creates no unreasonable hardship or injury to the owner of the land receiving the drainage;

(4) The drainage is natural and occurs by means of a natural watercourse or established watercourse;

(5) The owner of the land being drained does not substantially alter on a permanent basis the course of flow, the amount of flow or the time of flow from that which would occur[.] (Emphasis added).

[¶ 12.] There was sufficient evidence in this case to allow the trial court to reach the decision the drainage onto Hendricksons' land came from the ditches Wagners intentionally dug and the drainage did not occur by means of a natural water course but rather an artificial water course. There was expert testimony as to the draining of the wetlands and testimony from Hendricksons as to the flooding. Without this ditch, the natural drainage channel would not have taken the water from the wetlands and deposited it upon Hendricksons' land. *Anderson,* 24 S.D. at 223, 123 N.W. at 674. As the trial court did not error in this finding, we affirm.

[¶ 13.] **2. Whether the trial court erred in not granting Hendricksons a permanent injunction.**

[¶ 14.] Our standard of review for the consideration of injunctive relief is well established:

> Granting or denying an injunction rests in the sound discretion of the trial court. *Gross v. Conn. Mut. Life Ins. Co.,* 361 N.W.2d 259, 264 (S.D.1985); *Hofer v. Bridgewater Independent School Dist.,* 76 S.D. 483, 489, 81 N.W.2d 300, 303 (1957). We will not disturb a ruling on injunctive relief unless we find an abuse of discretion. *Maryhouse, Inc. v. Hamilton,* 473 N.W.2d 472, 474 (S.D.1991). An abuse of discretion can simply be an error of law or it might denote a discretion exercised to an unjustified purpose, against reason and evidence. *Koon v. United States,* 518 U.S. 81, 100, 116

S.Ct. 2035, 2047, 135 L.Ed.2d 392, 414 (1996) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990)); *Dacy v. Gors*, 471 N.W.2d 576, 580 (S.D.1991) (citations omitted).

*Knodel*, 1998 SD 73, ¶ 6, 581 N.W.2d at 506.

[¶ 15.] Hendricksons asked the court to issue an injunction requiring the Wagners to fill-in the ditches, thus returning the land to its previous state. Although the trial court found Wagners' artificial drainage ditches caused damage to Hendricksons' crops and awarded damages for losses, it refused to grant the requested injunction.

[¶ 16.] The trial court refused to grant the injunction for five reasons. First, it reasoned Hendricksons failed to show that injunctive relief was appropriate. Second, based on the evidence presented, the court was concerned it would be difficult with any degree of certainty, to determine the previous condition of the land. Without this knowledge, it would be difficult to return the land to its previous state. Third, there was no testimony as to the cost of the injunction. Fourth, the court was concerned about the amount of judicial oversight needed for the injunction. Fifth and finally, the court noted Hendricksons could still farm their land in times of average precipitation.

[¶ 17.] We do not agree with the circuit court. We find an injunction should have been granted to Hendricksons. We reverse this issue and remand to the circuit court with instructions to grant the injunction.

[¶ 18.] SDCL 21–8–14 provides that a permanent injunction may be granted:

(1) Where pecuniary compensation would not afford adequate relief;

(2) Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief;

(3) Where the restraint is necessary to prevent a multiplicity of judicial proceedings[.]

*Knodel* sets out additional factors for the circuit court to consider when faced with a request for an injunction.

[¶ 19.] In *Maryhouse, Inc.*, 473 N.W.2d at 475, we discussed the four basic factors to be used as a guide for the court.

1) Did the party to be enjoined cause the damage?

2) Would irreparable harm result without the injunction because of lack of an adequate and complete remedy at law?

3) Is the party to be enjoined acting in bad faith or is the injury-causing behavior an "innocent mistake"?

4) In balancing the equities, is the "hardship to be suffered by the [enjoined party] . . . disproportionate to the . . . benefit to be gained by the injured party"?

*Knodel*, 1998 SD 73, ¶ 9, 581 N.W.2d at 507 (citation omitted).

[¶ 20.] As for factor one, we agree the evidence supports the finding that Wagners intentionally caused damage to Hendricksons by cutting the ditches. Wagners clearly were on notice this idea was questionable, at best, when the contractor they tried to hire to do the work refused to do so without the consent of the Hendricksons. Wagners knew the Hendricksons would not consent.

[¶ 21.] As for factor two, Hendricksons have suffered irreparable harm and will continue to suffer without an injunction because of the lack of an adequate remedy at law. They should not be denied relief because the land may be difficult to return to its exact prior state. Witnesses and records exist which make such a restoration possible within the limits of reasonable accuracy.[2] This ditching is only twenty years old, not some ancient act. Each year Hendricksons are unable to grow

---

**2.** Lonnie Anderson, an expert witness testified he could do a survey to determine how to replace the land to its former condition. However, the trial court was concerned that

their crops to a normal yield, they will be forced back into court to request damages. This, in itself, would be a waste of judicial resources and an unnecessary expense to Hendricksons. The cost of this annual litigation may be in excess of a recovery thus, resulting in a de facto repeal of SDCL 46A–10A–20 in this instance and a reversal of the trial court's determination Wagners are the intentional wrongdoers and Hendricksons are entitled to relief from the courts.

[¶ 22.] Under the third factor Wagners cannot claim innocent mistake as they were acting intentionally when they dug the ditches. They knew Hendricksons did not approve of the ditching.

[¶ 23.] Finally, there was no evidence presented that the hardship suffered by Wagners would be disproportionate to the benefit gained by Hendricksons. Presumably, the ditching Wagners did with their own equipment can also be undone with their own equipment.

[¶ 24.] Injunctive relief should be granted under SDCL 21–8–14 as damages will not afford Hendricksons an adequate remedy. If left with the circuit court's ruling Hendricksons will be forced to bring an unknown number of prospective lawsuits in order to cover their losses. A trip to the courthouse to settle a legal dispute should be dispositive and not an annual event. Hendricksons have shown Wagners should be directed to stop draining onto Hendricksons' land through unnatural watercourses. We reverse on this issue and remand it to the circuit court with instructions to grant the injunction.

[¶ 25.] MILLER, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, concur.

Anderson could not ascertain with absolute accuracy, the circumference, depth or holding capacity of the former potholes. Aerial photographs also exist which would be of some assistance although they are obviously not three dimensional as to the depth of the potholes.