#26463-rev & rem-GAS

**2013 S.D. 63**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

EDWARD D. THURMAN and
KATHY L. THURMAN, AS NAMED
PLAINTIFFS ON BEHALF OF A CLASS,            Plaintiffs and Appellants,

v.

CUNA MUTUAL INSURANCE
SOCIETY and BLACK HILLS
FEDERAL CREDIT UNION,                       Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBERT A. MANDEL
Judge

\* \* \* \*

JAMES D. LEACH
Rapid City, South Dakota

and

MICHAEL A. WILSON of
Barker Wilson Law Firm, LLP
Rapid City, South Dakota                    Attorneys for plaintiffs
                                            and appellants.

\* \* \* \*

ARGUED APRIL 23, 2013

OPINION FILED **08/14/13**

ROGER K. HEIDENREICH of
Dentons US LLP
St. Louis, Missouri

and

CATHERINE M. SABERS
THOMAS G. FRITZ of
Lynn, Jackson, Shultz & Lebrun, PC
Rapid City, South Dakota

Attorneys for defendant and
appellee CUNA Mutual
Insurance.


FRANK A. BETTMAN
TODD LOVE of
Bettman, Hogue & Diedrich, Prof., LLC
Rapid City, South Dakota

Attorneys for defendant and
appellee Black Hills Federal
Credit Union.

#26463

SEVERSON, Justice

[¶1.] Edward D. and Kathy L. Thurman filed a class action lawsuit against CUNA Mutual Insurance Society and Black Hills Federal Credit Union for changing their credit disability insurance policy. The lawsuit alleges that CUNA Mutual Insurance Society and Black Hills Federal Credit Union wrongfully switched the credit disability insurance policies of 4,461 borrowers. The Thurmans filed a motion for class certification, which was denied by the trial court. The Thurmans petitioned this Court for a discretionary appeal of the class certification order and we granted the intermediate appeal. We reverse and remand the trial court's denial of class certification because the trial court erred in its application of class certification statutes to the facts in this case.

## BACKGROUND

[¶2.] In October 1995, Edward and Kathy Thurman obtained a home equity loan of $30,114.47, payable over 15 years from Black Hills Federal Credit Union (BHFCU). The Thurmans' loan was a closed-end loan, meaning that the payments would be the same amount every month over the 15 year period. At the time they finalized the loan, the Thurmans' pay-off date was August 27, 2010. When obtaining their loan at BHFCU, the Thurmans purchased credit disability insurance to cover Edward, who worked in the construction industry, often with heavy machinery. The credit disability insurance was a 30-day non-retroactive policy issued by CUNA Mutual Insurance Society (CUNA).

[¶3.] Credit disability insurance is a product offered by BHFCU in conjunction with loans to protect insureds against the risk of being unable to make

#26463

loan payments due to the insured's total disability. A 30-day non-retroactive disability insurance policy pays the insured if the insured is disabled for 30 days, but is not retroactive to the first day of the disability.

[¶4.] The credit insurance application / contract, which appeared at the bottom of the note and disclosure statement signed by the Thurmans, stated that the Thurmans would pay $4,140.79 for the insurance over the life of their home equity loan. The contract also stated that the rate charged was subject to change, but that written notice would be provided prior to any increase going into effect. The monthly premium charged for the policy was based on a rate per $100 of outstanding loan balance. The contract did not state the rate that the Thurmans would pay, but the rate was later determined to be $0.14 per $100 of outstanding loan balance.

[¶5.] In July 1999, BHFCU unilaterally changed its group credit disability insurance *policy*, not just the rate as authorized by the contract. BHFCU changed its credit disability insurance from a 30-day non-retroactive policy to a 14-day retroactive policy. Under the new policy, an insured's payments begin after the insured is disabled for 14 days and are retroactive to the first date of the disability. The new policy was accompanied by a rate increase to $0.235 per $100 of outstanding loan balance.

[¶6.] BHFCU announced the change in the insurance policy in their July 1999 newsletter. The newsletter was a trifold document, which included advertisements for BHFCU's member auto sale and an investment adviser, a report

from the president of BHFCU, and current loan rates. On the bottom of the interior center page, there was a "Notice to Members," which stated:

> This Notice is to be attached to and made a part of the Monthly Premium Certificate of Insurance issued under the Group Credit Insurance Policy.
>
> Effective July 1, 1999, Black Hills Federal Credit Union has changed the Credit Disability plan of coverage from 30 Day Non-Retroactive to 14 Day Retroactive. This affects the "Total Disability Benefits" provision of the Certificate previously given to you. The new provision will provide that instead of being disabled for 30 days with benefits beginning on the 31st day, you must be disabled for 14 days with benefits retroactive to the 1st day. All other provisions will remain the same. Your new Single Credit Disability rate will increase to $.235 per $100 of outstanding loan balance and your Joint Credit Disability rate will be $.411 per $100 of outstanding loan balance.
>
> The Credit Life rate per $100 of outstanding loan balance is $.075 for the Single Insured Plan and $.124 for the Joint Insured Plan.
>
> Loans originated through our Dealer Direct Program have, if insurance is included, always had 14 days retroactive disability insurance, therefore, they are not affected by the certificate endorsement notice.

Aside from the notice in the newsletter, no notice of the policy change was provided to the Thurmans. The Thurmans testified that they did not recall reading or receiving the newsletter containing the notice.

[¶7.]     In August 1999, the Thurmans filed a voluntary Chapter 7 bankruptcy petition. As part of the bankruptcy proceedings, the Thurmans reaffirmed their loan with BHFCU because they did not want to lose their home. The reaffirmation agreement, which was signed by the Thurmans and a representative of BHFCU, stated that the Thurmans' original note and security agreement from October 1995 were unchanged. However, the reaffirmation agreement's payment schedule

-3-

reflected the changed credit disability insurance policy and its higher premium rate. The Thurmans new payment schedule included 150 monthly payments of $355 and one final payment of $32.80, for a total of $53,282.80.

[¶8.] In 2009, the Thurmans became interested in paying off their loan before the original contract pay off date of August 27, 2010. The Thurmans believed that they owed $4,260 on the loan, or twelve payments of $355. Kathy contacted BHFCU and a BHFCU representative told her that the outstanding balance was more than $10,000. The Thurmans allege they worked with BHFCU representatives for a period of days to up to two weeks until they found that the reason for the higher outstanding balance was the credit disability policy change and corresponding rate increase. After discovering the credit disability policy switch, Kathy complained to the South Dakota Department of Revenue's Division of Insurance and the National Credit Union Administration. The subsequent investigation by the South Dakota Department of Revenue's Division of Insurance resulted in a consent order detailing the Division of Insurance's allegations against CUNA, which CUNA neither admitted nor denied, and a fine of $116,000 paid by CUNA.

[¶9.] In June 2011, the Thurmans filed a class action lawsuit against CUNA and BHFCU for breach of contract, unjust enrichment, violations of South Dakota's unfair trade and deceptive trade practices laws, deceit and breach of duty, conversion, and implied trust. The Thurmans allege that 4,461 borrowers at BHFCU were wrongfully switched from the 30-day non-retroactive insurance policy to the 14-day retroactive insurance policy. In addition, the Thurmans contend that

because of the change in the insurance policy, BHFCU garnered $6,838,414 in total profits as of June 2011, when this lawsuit was filed.

[¶10.]	On July 10, 2012, the trial court held a motion hearing to consider class certification. The trial court denied the motion for class certification and wrote a memorandum decision letter. Specifically, the trial court found that the Thurmans did not meet the adequacy requirement of Rule 23(a). Further, the trial court found that even if the Thurmans met the adequacy requirement, they did not meet the predominance and superiority requirements of Rule 23(b)(3). The trial court entered an order denying the motion for class certification on August 16, 2012. The Thurmans then petitioned this Court to hear an intermediate appeal of the order denying class certification. We granted the discretionary appeal on September 21, 2012.

## STANDARD OF REVIEW

[¶11.]	We have said in general terms that "'[o]n review of an order denying or granting a motion to maintain a class, the lower court may be reversed only for an abuse of discretion.'" *In re S.D. Microsoft Antitrust Litig.*, 2003 S.D. 19, ¶ 4, 657 N.W.2d 668, 671 (quoting *Trapp v. Madera Pac., Inc.*, 390 N.W.2d 558, 560-61 (S.D. 1986)).[1] A trial court abuses its discretion when it makes an error of law.

---

1.	*Trapp* cited to *Weiss v. York Hospital*, 745 F.2d 786 (3d Cir. 1984), for the standard of review. 390 N.W.2d at 560-61. *Weiss* set out the standard of review for a motion to grant or deny a class action certification in footnote 33. 745 F.2d at 807 n.33.

	Footnote 33 states, in part, "*[i]f the district court properly applies the relevant criteria*, we may reverse its order only for an abuse of discretion.'" *Id.* (quoting *Paton v. La Prade*, 524 F.2d 862, 875 (3d Cir. 1975)) (emphasis

(continued . . . )

*Hendrickson v. Wagners, Inc.*, 1999 S.D. 74, ¶ 14, 598 N.W.2d 507, 510-11 (citing

*Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 2047, 135 L. Ed. 2d 392

(1996)).  In applying the abuse of discretion standard of review, we no longer rely on

language, which we have previously used, stating "we do not determine whether we

---

( . . . continued)
added) (footnote 33 misattributes the quote to *Mazus v. Dep't of Transp., Commonwealth of Pa.*, 629 F.2d 870, 876 (3d Cir. 1980), *cert. denied*, 449 U.S. 1126, 101 S. Ct. 945, 67 L. Ed. 2d 113 (1981)).

Footnote 33 also cites *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756-57 (3d Cir.) (en banc), *cert. denied*, 419 U.S. 885, 95 S. Ct. 152, 42 L. Ed. 2d 125 (1974), which includes a lengthy discussion on the standard of review for class certification motions under Rule 23(b)(3).

In *Katz*, the Third Circuit held that when reviewing a class action certification, the Court must determine first if the four prerequisites of Rule 23(a) are met.  "These are mandatory requirements, and our review decides whether the mandates have been met."  *Katz*, 496 F.2d at 756.  Then, if class action certification is sought under Rule 23(b)(3), the trial court should have made two additional findings:

> (1) that the questions of law or fact common to the members of
> the class predominate over any questions affecting only
> individual members, and (2) that a class action is superior to
> other available methods for the fair and efficient adjudication of
> the controversy.  Both findings require the exercise of an
> informed judgment as to the application of defined legal
> standards.

*Id.*  On the question of predominance, an appellate court must assess if the trial court has "properly identified the factual or legal issues, and has properly identified those which are common."  *Id.*  If the trial court "has not properly identified the issues, and not properly evaluated which are common, the order is not entitled to such deference."  *Id.* at 756-57.  On the question of superiority, again an appellate court should review whether the trial court "properly applied the relevant criteria to the facts of the case."  *Id.* at 757.  If the trial court has done so, the appellate court will defer to the trial court's discretion.  *Id.*  If not, the trial court's "determination is not entitled to such deference."  *Id.*

would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision." *In re S.D. Microsoft Antitrust Litig.*, 2003 S.D. 19, ¶ 5, 657 N.W.2d at 671 (citations omitted). Though we have used the "judicial mind" definition in applying the abuse of discretion standard, the definition has been shortened to the point of losing much of its original meaning.[2] The original use of the definition was grounded in the application of law and circumstances in an effort to protect litigants from trial courts exceeding the bounds of reason. More recently, the Court has stated: "'Although we have repeatedly invoked stock definitions, the term 'abuse of discretion' defies an easy description. It is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.'" *State v. Lemler*, 2009 S.D. 86, ¶ 40, 774 N.W.2d 272, 286 (quoting *Burley v. Kytec Innovative Sports Equip., Inc.*, 2007 S.D. 82, ¶ 12, 737 N.W.2d 397, 402). *See also*

---

2. This Court first used the language in *F.M. Slagle & Co. v. Bushnell*, 70 S.D. 250, 16 N.W.2d 914 (1944). We stated:

> When a ruling upon such a motion is presented for review, the question is not whether the judges of this court would have made an original like ruling, but rather whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion. Our function in reviewing matters which rest in the discretion of the trial court is to protect litigants from conclusions which exceed the bounds of reason.

*F.M. Slagle & Co.*, 70 S.D. at 254-55, 16 N.W.2d at 916 (citing 5 C.J.S. *Appeal and Error* § 1583) (cited material is now found in 5 C.J.S. *Appeal and Error* § 906 (2007)).

#26463

*State v. Caruso*, 2012 S.D. 65, ¶ 6, 821 N.W.2d 386, 388; *Arneson v. Arneson*, 2003 S.D. 125, ¶ 14, 670 N.W.2d 904, 910.

[¶12.]     However, here we are asked to review the trial court's application of the class certification statutes to the facts of this case. This presents a mixed question of law and fact and requires a different analysis.

> If application of the rule of law to the facts requires an inquiry that is 'essentially factual'—one that is founded 'on the application of the fact-finding tribunal's experience with the mainsprings of human conduct'—the concerns of judicial administration will favor the [trial] court, and the [trial] court's determination should be classified as one of fact reviewable under the clearly erroneous standard. If, on the other hand, the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo.

*McNeil v. Superior Siding, Inc.*, 2009 S.D. 68, ¶ 6, 771 N.W.2d 345, 347-48 (quoting *Permann v. S.D. Dep't of Labor*, 411 N.W.2d 113, 119 (S.D. 1987)).

## DISCUSSION

[¶13.]     This appeal addresses only the issue of class certification and not the merits of the lawsuit. "'Class actions serve an important function in our judicial system.'" *Trapp*, 390 N.W.2d at 560 (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 560 (2nd Cir. 1968)).

> By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation.

*Id.* (quoting *Eisen*, 391 F.2d at 560). In order to obtain certification as a class suit, plaintiffs in South Dakota must satisfy all of the requirements of SDCL 15-6-23(a)

-8-

#26463

(Rule 23(a)) and at least one of the provisions of SDCL 15-6-23(b) (Rule 23(b)).  Rule

23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if:
>
> (1) The class is so numerous that joinder of all members is impracticable;
> (2) There are questions of law or fact common to the class;
> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class;
> (4) The representative parties will fairly and adequately protect the interests of the class; and
> (5) The suit is not against this state for the recovery of a tax imposed by chapter 10-39, 10-39A, 10-40, 10-41, 10-43, 10-44, 10-45, 10-46, 10-46A, 10-46B, or 10-52.

SDCL 15-6-23(a).  If all of the prerequisites of Rule 23(a) are met, a class may be

certified if it satisfies one of the following three subsections:

> (1) The prosecution of separate actions by or against individual members of the class would create a risk of:
>
> > (A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
> > (B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate permanent injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include:

-9-

(A) The interest of members of the class in individually controlling the prosecution or defense of separate actions;
(B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum;
(D) The difficulties likely to be encountered in the management of a class action.

SDCL 15-6-23(b).

[¶14.] In general, class certification "is favored by courts in questionable cases." *Beck v. City of Rapid City*, 2002 S.D. 104, ¶ 12, 650 N.W.2d 520, 525. "[A] court is required to conduct a rigorous analysis to determine if the elements of Rule 23 have been met." *In re S.D. Microsoft Antitrust Litig.*, 2003 S.D. 19, ¶ 8, 657 N.W.2d at 672 (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982)) (footnote omitted). Plaintiffs in class action suits "must make a 'threshold showing' . . . [of] a common impact on the class members." *Id.* ¶ 12, 657 N.W.2d at 673 (citing *Bellinder v. Microsoft Corp.*, No. 99-CV-17089, 2001 WL 1397995, at *7 (Kan. Dist. Ct. Sept. 7, 2001); *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1041-42 (N.D. Miss. 1993)). But, plaintiffs "are not required to prove their case on the merits at the class certification stage." *Id.* (citing *Eisen*, 417 U.S. at 177-78, 94 S. Ct. at 2152-53; *Bellinder*, 2001 WL 1397995, at *7).[3]

---

3. In defining the concepts of "rigorous analysis" and "threshold showing," we stated:

> The term "threshold showing" based upon a "rigorous analysis" is probably not subject to a more specific legal definition than its generic understanding because of the various types of potential

(continued . . . )

[¶15.]        *Rule 23(a)(4) Adequacy Requirement*

[¶16.]        In this case, the trial court found that the Thurmans met the first three requirements of Rule 23(a), but failed to meet the requirements of Rule 23(a)(4) and Rule 23(b)(3).  The trial court found that the Thurmans would not be adequate representatives of the class under SDCL 15-6-23(a)(4) because of the potential for conflicts of interest.

[¶17.]        In evaluating whether a plaintiff has fulfilled the adequacy of representation requirement of Rule 23(a), a trial court should consider two factors: "'(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'"  *Trapp*, 390 N.W.2d at 561-62 (quoting *Weiss*, 745 F.2d at 811).  The adequacy of the Thurman's attorneys was not disputed.  As to the adequacy of the Thurmans as representatives, the trial court found:

---

( . . . continued)

> evidence that could be submitted to the court in the certification controversy.  We are mindful that if the standard is set too low, it invites non-meritorious claims to be filed as class actions, which may force a potential defendant to evaluate the case more on economic costs of defending a class action rather than the case on the merits.  On the other hand, should too high a standard be set, potential plaintiffs with valid claims, but limited means, are economically precluded from redress to the courts because they cannot each financially maintain individual actions.  SDCL 15-6-1 is a guide to [Rule 23] certification questions.  It states in part that our civil procedure code is to "be construed to secure the just, speedy and inexpensive determination of every action."

*In re S.D. Microsoft Antitrust Litig.*, 2003 S.D. 19, ¶ 16, 657 N.W.2d at 675 (citations omitted).

> [T]he class as defined in the Complaint almost certainly includes some members who either had actual notice of the change in policy and desired the change, or had actual notice of the change and did not act on the information. These factual discrepancies, while not necessarily creating animus between the interests of the Thurmans and those of the remaining class members, it does call into question the adequacy of the Thurmans' ability to fairly represent the interests of the class.

Importantly, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 2250, 138 L. Ed. 2d 689 (1997). "'A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Id.* at 625-26, 117 S. Ct. at 2250-51 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S. Ct. 1891, 1896, 52 L. Ed. 2d 453 (1977)) (internal quotation marks and citation omitted).

> The adequacy-of-representation requirement "tends to merge" with the commonality and typicality criteria of Rule 23(a), which "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."

*Id.* at 626 n.20, 117 S. Ct. at 2251 n.20 (quoting *Gen. Tel. Co. of the Sw.*, 457 U.S. at 157 n.13, 102 S. Ct. at 2370 n.13) (alterations in original).

[¶18.] The trial court found that the Thurmans, as class representatives, had claims common and typical of other class members, as required by Rule 23(a)(2)-(3). Then the trial court found that there were potential factual differences between the Thurmans and other class members that could create conflicts of interest. However, the trial court failed to identify those potential conflicts or explain why the conflicts

could exist. In *Trapp*, we determined that although there were potential factual differences between the class representatives and other members of the class, the named class representatives would "fairly and adequately protect the interests of all class members." 390 N.W.2d at 562. In this case, there is no evidence that any potential factual differences between the Thurmans and other class members would result in the Thurmans failing to protect the interests of the other class members. Thus, on the facts presented, the trial court erred in ruling that the Thurmans failed to meet the adequacy requirements of Rule 23(a)(4).

[¶19.]      *Rule 23(b)(3) Predominance Requirement*

[¶20.]      In addition, the trial court found that even if the Thurmans could satisfy the adequacy requirement of Rule 23(a)(4), they could not satisfy the predominance and superiority requirements of Rule 23(b)(3) and thus, the class could not be certified. In finding "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy[,]" the trial court may find pertinent:

> (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum;
> (D) The difficulties likely to be encountered in the management of a class action.

SDCL 15-6-23(b). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623, 117 S. Ct. at 2249.

> The common questions need not be dispositive of the entire action. In other words, "predominate" should not be automatically equated with "determinative." Therefore, when one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

7AA Wright & Miller's Fed. Prac. & Proc. Civ. § 1778 (3d ed.) (footnotes omitted).

[¶21.] Here the trial court found that "the predominance issue centers around the point in time at which each class member's claim accrued." The trial court also found that "individualized proof is patently required to litigate the defendants' statute of limitations defense" and concluded that individual questions would predominate over class questions. We disagree. The predominance question focuses on whether the members of a class have enough in common to have their claim adjudicated together. At the point of class certification, the primary focus is not on BHFCU and CUNA's potential affirmative defenses, but whether the proposed class of plaintiffs shares more common issues of fact or law than individual issues to be adjudicated in this case. The issues common to the class members are that all were customers of BHFCU with loans through the credit union and all elected to purchase a 30-day non-retroactive credit disability insurance policy through CUNA. Without providing a new policy document and only providing notice through a member newsletter, BHFCU and CUNA changed

the credit disability insurance policy for all policyholders to a 14-day retroactive policy. This policy change, which lacked specific authorization from the individual customers, increased the premium for disability insurance, decreased the amount paid to the loan principle every month, and extended the time and money it took for customers to pay back their loans.

[¶22.]     In this case, the statute of limitations issue is predominant over individual issues. CUNA and BHFCU assert a statute of limitations affirmative defense and argue that the trial court would have to determine the notice of claim accrual for each individual in the suit in order to find whether the statute of limitations had expired for each individual in the case. The trial court accepted CUNA and BHFCU's argument that notice of claim accrual for each individual would need to be determined.

[¶23.]     We acknowledge that the statute of limitations is a significant defense asserted by CUNA and BHFCU. When asserting a statute of limitations affirmative defense, the defendants have to establish that the lawsuit was brought beyond the statutory period. *One Star v. Sisters of St. Francis, Denver, Colo.*, 2008 S.D. 55, ¶ 12, 752 N.W.2d 668, 675 (quoting *Peterson v. Hohm*, 2000 S.D. 27, ¶ 7, 607 N.W.2d 8, 10) (stating, in the context of a motion for summary judgment, that when "'the defendant asserts the statute of limitations as a bar to the action and presumptively establishes the defense by showing the case was brought beyond the statutory period, the burden shifts to the plaintiff to establish the existence of material facts in avoidance of the statute of limitations.'"). Because the trial court determined that a jury will need to decide the question of notice of claims accrual,

CUNA and BHFCU will need to establish that the Thurmans and other plaintiffs brought the suit beyond the statutory period.

[¶24.] In order to shift the burden to the Thurmans, CUNA and BHFCU must establish that the Thurmans and other plaintiffs' causes of action accrued more than six years before the statutory period expired because the plaintiffs received notice of the policy change causing the statute of limitations to run. "Notice is either actual or constructive." SDCL 17-1-1. "Actual notice consists in express information of a fact." SDCL 17-1-2. "Constructive notice is notice imputed by the law to a person not having actual notice." SDCL 17-1-3. "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." SDCL 17-1-4.

[¶25.] Here, constructive notice of claims accrual can be determined on a class-wide basis because the test to determine constructive notice is objective, applying a reasonable person standard. *Strassburg v. Citizens State Bank*, 1998 S.D. 72, ¶ 13, 581 N.W.2d 510, 515 (citations omitted) (noting that "[s]tatutes of limitations begin to run when plaintiffs first become aware of facts prompting a reasonably prudent person to seek information about the problem and its cause."); SDCL 17-1-4. *See also Minter v. Wells Fargo Bank, N.A.*, 279 F.R.D. 320, 327 (D. Md. 2012). All of the borrowers and insureds in this case went through roughly the same process to obtain their loans and credit disability insurance. Because BHFCU used a uniform process to sell credit disability insurance, changed the policy at the same time, sent out its newsletter to all of the borrowers, and sent statements to all

borrowers, the claims regarding constructive notice may be decided by a jury applying the objective test to the circumstances in this case. *See Strassburg*, 1998 S.D. 72, ¶ 13, 581 N.W.2d at 515. *See also Minter*, 279 F.R.D. at 327 (stating that "due diligence is evaluated using an objective standard, so a borrower's level of sophistication is irrelevant to the inquiry.").

[¶26.]     We also recognize that actual notice may involve an individualized inquiry because unlike constructive notice, actual notice is dependent on what each class member actually knew. But here, CUNA and BHFCU's only argument supporting actual knowledge is based on common facts. CUNA and BHFCU argue that actual notice may have arisen from the newsletter, the debtors' monthly statements, and some debtors' changes in the amount of their monthly loan payments or the number of payments necessary to pay off the loans.[4] Each of these facts is common to the entire class or limited subclasses. Therefore, the actual notice defense can be determined by the trier of fact in one common proceeding. As one of the defendant's own primary authorities recognizes, when the statute of limitations defense is based on common features such as claimed notice through mailings, the defense is dependent upon facts applicable to the class, and class

---

4.     CUNA and BHFCU also argued that eight putative class members "presumably" cancelled their credit disability insurance due to the plan change given that their insurance stopped shortly after the plan. But there is no evidence that is the case. We cannot find individual predominance based on a "presumption" that eight of 4,461 putative class members may have canceled their loans because they learned of the policy change in time to preclude their current claim.

certification may predominate. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 327 n.19 (4th Cir. 2006).

[¶27.]     Moreover, "'[c]ourts have been nearly unanimous in holding that possible differences in the application of a statute of limitations to individual class members . . . does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present.'" *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 78 (E.D.N.Y. 2004) (quoting *In re Energy Sys. Equip. Leasing Sec. Litig.*, 642 F. Supp. 718, 752-53 (E.D.N.Y. 1986)).

> The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones. Given a sufficient nucleus of common questions, the presence of the individual issue of compliance with the statute of limitations has not prevented certification of class actions in [certain] cases.

*Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 924 (3d Cir. 1992) (quoting *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976)).  In this case, there is a nucleus of common questions regarding liability for the defendants' conduct.  Because the record also indicates that the notice issues are based on facts common to the class, individualized notice questions do not predominate.[5]

---

5.     We also note that our decision does not *prevent* CUNA and BHFCU from further pursuing a more individualized statute of limitations defense based on actual notice.  After the predominant and common issues have been decided, CUNA and BHFCU may present evidence that certain class members had actual notice in additional individualized proceedings. *Cf. Wal-mart Stores v. Dukes*, ___ U.S ___, ___, 131 S. Ct. 2541, 2561, 180 L. Ed. 2d 374 (2011) (noting that class actions that involve individualized relief usually require additional individualized proceedings where "the burden of proof will shift to the [defendant], but it will have the right to raise any individual affirmative defenses it may have[.]"); *Smillow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39-40 (1st Cir. 2003) ("If . . . evidence later shows that an affirmative defense is likely to bar claims against at least some class

(continued . . . )

[¶28.] There also may be individual questions as to damages calculations, but the predominant issues in this case are those common to the class, rather than individuals. In addition, a certified class is subject to modification if there are new developments in the course of a trial. *Beck*, 2002 S.D. 104, ¶ 14 n.5, 650 N.W.2d at 526 n.5 (quoting *Boudreaux v. State Dep't of Transp. & Dev.*, 690 So.2d 114, 122 (La. Ct. App. 1997)). Thus, on the facts presented, the trial court erred in ruling that the Thurmans failed to meet the predominance requirement of Rule 23(b)(3).

[¶29.] *Rule 23(b)(3) Superiority Requirement*

[¶30.] In considering the superiority requirement of Rule 23(b)(3), the trial court must evaluate whether the class action is a better method than others for the "fair and efficient adjudication of the controversy." SDCL 15-6-23(b)(3). The trial court found that "as the class is currently defined, the necessity of numerous hearings to determine the propriety of Defendants' statute of limitations defense does not make class resolution of this case superior to any other method of adjudication." The trial court failed to consider common issues in the statute of limitations defense we described above and to make findings regarding which other methods of adjudication that it considered and found to be superior. The trial court did not address why those methods were fair or an efficient use of judicial resources. The trial court also failed to address why individually trying 4,461 cases is a

---

( . . . continued)
members, then a court has available adequate procedural mechanisms."); *George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 181 (D. Mass. 2012) ("[T]o the extent that there are relevant individual issues, the [defendants] will be entitled, as due process requires, later in [the] proceedings to show that they were in fact not liable to a particular plaintiff . . . .").

superior method to the use of a class action. The trial court did not use any of the factors outlined in Rule 23(b)(3)(A)-(D) in its consideration of the superiority issue. Thus, on the facts presented, the trial court erred in ruling that the Thurmans failed to meet the superiority requirement of Rule 23(b)(3).

[¶31.] Because we hold that the trial court erred in denying the class certification, we need not reach the issue of redefinition of the class argued by the Thurmans.

## CONCLUSION

[¶32.] The trial court erred in its application of Rule 23(a) and 23(b) to the facts in this case. We reverse and remand to the trial court for certification of the class.

[¶33.] GILBERTSON, Chief Justice, and ZINTER and WILBUR, Justices, and SMITH, Circuit Court Judge, concur.

[¶34.] SMITH, Circuit Court Judge, sitting for KONENKAMP, Justice, disqualified.