#28682-a-GAS
**2019 S.D. 30**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

DEVON ANTHONY DELEHOY,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MICHAEL W. DAY
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

ERIN E. HANDKE
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


TIMOTHY J. BARNAUD
Belle Fourche, South Dakota             Attorney for defendant
                                        and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS ON
MARCH 25, 2019
OPINION FILED **05/22/19**

#28682

SEVERSON, Retired Justice

[¶1.] Devon Delehoy was charged with kidnapping, assaulting, and raping his girlfriend Kari Vaughn. During his trial, the jury heard a recording of a phone call between Vaughn and Delehoy over Delehoy's objection. Vaughn's friend, Chalsey Shepherd, had recorded the call on her cellphone. During the call, Delehoy incriminated himself. Shepherd played the recording for the jury. Unbeknownst to the circuit court or parties, the entire recording was not played. Delehoy moved for a judgment of acquittal, a mistrial, or a curative instruction. The court denied a mistrial or a judgment of acquittal but directed the jury to disregard the entire recording and Shepherd's testimony. The jury found Delehoy guilty of simple assault and kidnapping and not guilty of rape or aggravated assault. Delehoy appeals. We affirm.

**Background**

[¶2.] Delehoy and Vaughn began dating in January 2017. Their relationship was tumultuous from the beginning. On June 27, 2017, at approximately 2:00 a.m., Vaughn met Delehoy at Common Cents in Belle Fourche to pay for Delehoy's fuel. After the two left Common Cents together, Delehoy drove Vaughn toward Spearfish, then back toward Belle Fourche, and then through Belle Fourche. Vaughn testified that she asked Delehoy where they were going, and he replied that he was "going to take [her] out here and kill [her]."

[¶3.] Ultimately, Delehoy stopped the vehicle, approximately thirty or forty miles outside of Belle Fourche. Vaughn testified that Delehoy placed his face close to hers and began screaming in her face and ear. He struck her on the back of the

head, which caused her to go in and out of consciousness and caused her lip to bleed. She claimed she faked a seizure to stop the attack. The attack stopped, and Delehoy began driving, traveling north. But he stopped driving north and turned the vehicle around, driving back toward Belle Fourche. Vaughn testified that Delehoy played "chicken" with semi-trucks and nearly hit one head-on.

[¶4.]	Delehoy again stopped his vehicle off the side of the road. He let Vaughn exit the vehicle to urinate. (She testified she did not believe she could run fast enough to escape.) When she reentered the vehicle, she noticed Delehoy had exposed his erect penis. Vaughn testified that she did whatever she could to appease him and removed her clothes. She further testified that after the parties engaged in sexual acts for thirty or forty minutes, Delehoy began crying and apologizing.

[¶5.]	Vaughn testified that she was able to convince Delehoy to let her drive them to Belle Fourche. Once they reached her apartment, she asked him to let her prepare a bag of food for him to take to their homeless friend. Delehoy agreed and left with the food.

[¶6.]	A few hours later, Vaughn went to the Crow Peak Motel (Motel) where she and her friend Shepherd worked. Vaughn told Shepherd what had happened, and according to Vaughn, Shepherd suggested Vaughn call Delehoy so the two could record his statements. Vaughn placed the call on speakerphone, and Shepherd used her phone to record the conversation between Vaughn and Delehoy. During the call, Delehoy made certain admissions.

[¶7.]        After the call between Vaughn and Delehoy ended, Delehoy called the

Motel pretending to be law enforcement, and the manager of the Motel contacted

the local police.  After an officer arrived, Vaughn relayed what had happened

between her and Delehoy.  Ultimately, the South Dakota Division of Criminal

Investigation assigned Agent Elbert Andress to investigate.

[¶8.]        Agent Andress met with Vaughn at the Spearfish Police Department.

During the interview, the agent observed that Vaughn had a small cut on her lip

and a bump on the back of her head.  Agent Andress took photographs.  Vaughn

told Agent Andress that she did not believe Delehoy had raped her.  She also told

Agent Andress that she had photographs on her phone of her injuries from a

previous incident between her and Delehoy and claimed she would deliver her

phone to him so he could download everything.  (She did not deliver her phone to

Agent Andress; it was taken from her in an unrelated drug arrest.)  After

interviewing Vaughn, the agent arranged for a sexual assault kit to be completed

with Vaughn at the hospital.

[¶9.]        Agent Andress also interviewed Delehoy.  He advised Delehoy of his

*Miranda* rights and began with basic biographical questions.  Delehoy admitted

that he was with Vaughn and that the two had gone to Common Cents.  He also

admitted that they drove around Belle Fourche.  Delehoy denied ever driving north

through Belle Fourche but then admitted that they did drive north.  He claimed

that they were tired and pulled over.  He admitted the two had sex.  Delehoy also

admitted that the two had argued and that he hit Vaughn.  He, however, claimed he

only swatted at her hand when she attempted to grab the wheel. Agent Andress recorded his interview with Delehoy, and it was later played for the jury.

[¶10.]    Agent Andress also interviewed Shepherd. She informed the agent that she had recorded a phone conversation between Vaughn and Delehoy. Agent Andress recorded the recording while Shepherd played it from her phone. Agent Andress did not seize and duplicate (dump) Shepherd's phone memory to obtain the original recording because he did not want to inconvenience her.

[¶11.]    Agent Andress arrested Delehoy, and Delehoy was later indicted for two counts of second-degree rape, one count of second-degree kidnapping, one count of aggravated assault, and two counts of simple assault. All counts were charged as domestic violence crimes. The State filed a part II information alleging Delehoy to be a habitual offender. Delehoy pleaded not guilty, and a jury trial was held March 5–8, 2018.

[¶12.]    During the jury trial, Delehoy objected to the State's attempt to admit Agent Andress's recording of Shepherd's recording, asserting the evidence lacked sufficient foundation because it was a recording of a recording. The court ruled the evidence inadmissible because there was not "a proper foundation for the recording." During Shepherd's testimony, the State again attempted to establish a foundation for the admission of Agent Andress's recording of Shepherd's recording. Delehoy objected based on hearsay and lack of foundation. The court refused to admit Agent Andress's recording of Shepherd's recording based on a lack of adequate foundation.

[¶13.] However, during a recess, the State learned that Shepherd had the original recording stored in her email account. The State offered Shepherd's original recording for admission. Delehoy raised the same objections he had raised against admission of Agent Andress's recording of Shepherd's recording. Delehoy further objected because, in his view, the State could have obtained and had a duty to obtain the recording from Shepherd prior to trial. The court overruled Delehoy's objections and allowed Shepherd to play the recording for the jury.

[¶14.] When the State, via Agent Andress, reduced the emailed recording to a compact disk so to make it part of the record, he observed that the time stamp did not match the time stamp played for the jury. In particular, the time stamp played for the jury was thirty minutes and the recording was forty minutes. The un-played portion contained statements by Shepherd and Vaughn related to their methamphetamine use. Agent Andress informed the State, and the State informed Delehoy's attorney and the court. Delehoy moved for a judgment of acquittal, for a mistrial, or a curative instruction. Delehoy highlighted that he had made multiple objections related to the admission of the recording based on foundation. He further emphasized that the State could have obtained the original recording prior to trial but did not. In Delehoy's view, admitting the recording denied him due process.

[¶15.] Delehoy also argued *Brady* violations occurred. He asserted that he relied "on the State to get to [him] this exculpatory and impeachment evidence." He highlighted that Shepherd used a nonworking phone to record the call; yet, Agent Andress "let her keep it for convenience[.]" He further claimed that Vaughn committed perjury when she testified about whether they used condoms and how

she turned her phone over to law enforcement. Delehoy argued he could "not receive a fair trial if this is what is going on."

[¶16.] The court expressed it was "troubled by several things here: One [was] the State never obtained Kari Vaughn's phone. The State never obtained Shepherd's phone. [The State] relied on the recording of the recording that Agent Andress made." The court also observed that "the phone could have been taken, dumped, and it wasn't. Instead, [the State] just relied on the recording of the recording." The court took under advisement Delehoy's motion for a judgment of acquittal and request for a mistrial. It, however, struck Shepherd's testimony and the recording. When the jury returned, the court instructed it to disregard Shepherd's testimony and the recording.

> [Y]esterday you heard the testimony of Chalsey Shepherd and the audio of the telephone conference that she recorded between Mr. Delehoy and Kari Vaughn.
>
> We were led to believe the entire audio recording was played to you. I was informed this morning that the entire audio recording of the telephone conference was not played to you. Therefore, I am striking the entire testimony of Chalsey Shepherd and I am striking the entire audio recording that she played off of her phone.
>
> You are instructed to disregard the entire testimony of Chalsey Shepherd. You are further instructed to disregard the entire audio recording of the telephone conference between Mr. Delehoy and Kari Vaughn.

The State called its next witness, and the trial continued.

[¶17.] After the State rested its case, Delehoy renewed his motion for a judgment of acquittal and request for a mistrial. The court again took the motion for a mistrial under advisement. It denied Delehoy's motion for a judgment of

acquittal. The defense then rested its case. The jury found Delehoy guilty of second-degree kidnapping and of two counts of simple assault. The jury acquitted Delehoy of rape and aggravated assault. Delehoy again requested a mistrial, which the court denied.

[¶18.]    The circuit court held a trial on the part II information, and the jury found him to be the same person previously convicted of a prior crime. The circuit court sentenced Delehoy to twenty-two years in prison on the second-degree kidnapping conviction with four years suspended and credit for time served and 365 days for each conviction of simple assault with credit for time served. All counts were to run concurrent to each other and to the sentence entered in a different criminal file.

[¶19.]    Delehoy appeals, asserting: (1) the circuit court erred when it denied his motion for a mistrial; (2) he was denied a fair trial due to cumulative errors; and (3) his sentence was grossly disproportionate in violation of his constitutional right to be free from cruel and unusual punishment.

### Standard of Review

[¶20.]    We will not overturn a circuit court's decision to deny a motion for a mistrial unless there is an abuse of discretion. *State v. Thomas*, 2019 S.D. 1, ¶ 27, 922 N.W.2d 9, 17. However, to determine whether a defendant was denied the constitutional right to a fair trial based on the cumulative effect of trial errors, we review the entire record to determine if a fair trial was held. *State v. Davi*, 504 N.W.2d 844, 857 (S.D. 1993). We review de novo whether a defendant's

sentence is cruel and unusual in violation of the Eighth Amendment. *State v. Rice*, 2016 S.D. 18, ¶ 11, 877 N.W.2d 75, 79.

## Analysis

[¶21.]    Before we address Delehoy's arguments on appeal, we seek to make clear that our abuse of discretion standard of review does *not* examine whether a "judicial mind" could have reasonably reached the same decision. We abandoned this statement of review because it does not reflect the original definition of an abuse of discretion. *Thurman v. CUNA Mut. Ins. Soc'y*, 2013 S.D. 63, ¶ 11, 836 N.W.2d 611, 616. Nevertheless, parties continue to cite to the "judicial mind" definition in appellate filings, including both parties in this appeal.

[¶22.]    To be clear, "we no longer rely on language, which we have previously used, stating 'we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and facts, could have reached a similar decision.'" *Id.* The correct statement of review is as follows: An abuse of discretion "is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Id.* (quoting *State v. Lemler*, 2009 S.D. 86, ¶ 40, 774 N.W.2d 272, 286).

### *Motion for a Mistrial—Brady Violation*

[¶23.]    Delehoy contends the circuit court erred when it denied his motion for a mistrial after it learned that Shepherd had not played the entire recording for the jury. He acknowledges the State did not have Shepherd's original recording prior to her testimony. He further acknowledges that Shepherd acted independently when

she played only a portion of the recording. Yet, he argues the State could have obtained the original recording; therefore, Shepherd's actions under these circumstances must be imputed to the State. He highlights that the State directed its witnesses (including Shepherd) not to talk to defense investigators making it impossible to learn that Shepherd had the original recording. Delehoy also points out that Shepherd would not have been inconvenienced had the State taken her phone to obtain the original recording. In Delehoy's view, the State's failure to produce Shepherd's original recording constitutes a *Brady* violation and "tainted the fairness" of his trial.

[¶24.] The State responds that Delehoy "must allege bad faith to implicate a right under *Brady*," and, here, there is no allegation Agent Andress acted in bad faith when he decided not to seize Shepherd's phone and obtain the original recording. The State directs this Court to *Jones v. Slay*, 61 F. Supp. 3d 806 (E.D. Mo. 2014) and *White v. McKinley*, 519 F.3d 806 (8th Cir. 2008). Neither *Jones* nor *White* support that Delehoy was required to establish bad faith on the part of the State or Agent Andress. Both *Jones* and *White* involved § 1983 actions—a civil claim against a person with qualified immunity—not a criminal proceeding by the State against a defendant. *Jones*, 61 F. Supp. 3d at 822; *White*, 519 F.3d at 814. Moreover, it is well settled that "the good faith or bad faith of the prosecution" is immaterial to a determination whether a *Brady* violation occurred. *See Thompson v. Weber*, 2013 S.D. 87, ¶ 38, 841 N.W.2d 3, 12 (quoting *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196, 10 L. Ed. 2d 215 (1963)).

[¶25.]     Nevertheless, the State claims it committed no *Brady* violation because there was nothing to produce; it was unaware Shepherd had the original recording. "A *Brady* violation occurs when (1) the evidence at issue [i]s favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence [has] been suppressed by the State, either willfully or inadvertently; and (3) prejudice [has] ensued." *Thompson*, 2013 S.D. 87, ¶ 38, 841 N.W.2d at 12 (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286 (1999)). We note that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S. Ct. 1555, 1567, 131 L. Ed. 2d 490 (1995).

[¶26.]     Although Agent Andress, acting for the State, chose not to obtain the original recording, the State produced Agent Andress's recording of Shepherd's recording for Delehoy prior to trial. We recognize Delehoy did not receive the entire recording made by Shepherd. However, the evidence not produced prior to trial was merely cumulative to evidence presented at trial. In particular, the undisclosed portion of the recording contains statements by Shepherd and Vaughn related to their methamphetamine use, and multiple witnesses disclosed the same at trial. Because Delehoy cannot establish he was prejudiced by the State's failure to produce the full recording prior to trial, the circuit court did not err when it denied Delehoy's request for a mistrial for an alleged *Brady* violation.

***Motion for Mistrial—Abuse of Discretion***

[¶27.]     Delehoy contends the circuit court abused its discretion in denying his motion for a mistrial because striking the entire recording and Shepherd's testimony and instructing the jury to disregard the evidence "was not enough to cure the prejudice that [he] suffered" from the jury hearing the recording. He maintains he "could not receive a fair trial" under these circumstances.

[¶28.]     "As a general rule, if a court excludes improperly admitted evidence and directs the jury to disregard it, the error is cured." *Young v. Oury*, 2013 S.D. 7, ¶ 18, 827 N.W.2d 561, 567. An exception exists, however, when "after probing the record, it appears the prejudicial effect of the admission was not fully overcome" despite the admonition to disregard the evidence. *Id.* Indeed, "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton v. United States*, 391 U.S. 123, 135, 88 S. Ct. 1620, 1627, 20 L. Ed. 2d 476 (1968).

[¶29.]     From our review of the record, we are troubled that the prosecutor relied merely on a recording of a recording as its best evidence when there was no question the prosecutor could have, via Agent Andress, obtained the original recording prior to trial. The prosecutor cited inconvenience as a valid reason to rely on a recording of a recording. The circuit court disagreed and precluded the admission of the State's evidence for lack of foundation. Yet the jury ultimately heard the phone call between Delehoy and Vaughn because during the trial, the prosecutor obtained access to the original recording and established the necessary

foundation for its admission. But the jury did not hear the entire recording because Shepherd—the State's witness—controlled the length of the recording played for the jury. Had the prosecutor obtained and produced the entire recording prior to trial, this error would not have occurred.

[¶30.] Nevertheless, once the circuit court learned of the error, the court promptly directed the jury to disregard Shepherd's testimony and the recording. Delehoy does not challenge the propriety of the circuit court's admonishment; therefore, we next examine whether a mistrial was the only effective relief to correct the error.

[¶31.] We begin with the premise that it is presumed the jury followed the court's instruction to disregard the excluded evidence. *State v. Dillon* 2010 S.D. 72, ¶ 28, 788 N.W.2d 360, 369; *State v. Means,* 363 N.W.2d 565, 569 (S.D. 1985). Next, we observe that a court has discretion both in the decision to grant or deny a mistrial. *State v. Anderson*, 1996 S.D. 46, ¶ 21, 546 N.W.2d 395, 401. "To justify the granting of a mistrial, an actual showing of prejudice must exist." *Id.* Prejudice exists when the error "in all probability must have produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it." *Id.* (quoting *State v. Michalek*, 407 N.W.2d 815, 818 (S.D. 1987)).

[¶32.] From our review, the recording did not in all probability produce some effect upon the jury's verdict and was not harmful to Delehoy's substantial rights. In so concluding, we consider the State's candor in immediately informing the court and defense counsel of Shepherd's actions and the circuit court's prompt admonition. We also consider that the jury did not find Delehoy guilty of rape or

aggravated assault.  The circuit court did not abuse its discretion when it denied Delehoy's motion for mistrial.

### Cumulative Errors

[¶33.]    Delehoy next argues that the cumulative effect of the errors at trial denied him a fair trial.  He reiterates that the State committed a *Brady* violation. He then argues that the State's "*Brady* violation was compounded by the deception and perjury engaged in by [Shepherd] in regard to the altered recording she presented."  He further asserts Vaughn committed "outright perjury."  According to Delehoy, he "could not receive a fair trial when the State's witnesses were committing perjury and defying the authority of the trial court by altering evidence that was presented to the jury."

[¶34.]    "[T]he cumulative effect of errors by the trial court may support a finding by the reviewing court of a denial of the constitutional right to a fair trial." *Davi*, 504 N.W.2d at 857.  Although Delehoy contends cumulative error existed, the State did not commit a *Brady* violation and there exists no ruling that Vaughn committed perjury.  Nevertheless, we are troubled by the conduct of the prosecutor in this case by not obtaining the recording.  However, our review of the entire record supports that Delehoy received a fair trial.  *See id.*

### Grossly Disproportionate Sentence

[¶35.]    Delehoy takes issue with the circuit court's sentence "near the statutory maximum" on his kidnapping conviction.  He contends his age, request "for mercy in passing sentence," and openness to rehabilitation "hardly warrants a 22 year penitentiary sentence."  In his view, the circuit court "punished [him] based

on his claims of actual innocence." These arguments, however, relate to the circuit court's exercise of discretion in sentencing a particular defendant, not whether his sentence violates the Eighth Amendment.

[¶36.]    For a sentence to be unconstitutional under the Eighth Amendment, it must be grossly disproportionate to the offense. In reviewing the constitutionality of a sentence, we look to "the gravity of the offense and the harshness of the penalty." *State v. Chipps,* 2016 S.D. 8, ¶ 38, 874 N.W.2d 475, 488–89. "The gravity of the offense is determined by looking at the offense's relative position on the spectrum of all criminality" and the harshness looks to "the penalty's relative position on the spectrum of all permitted punishments." *Id.* ¶ 35. Only when "the penalty imposed appears to be grossly disproportionate to the gravity of the offense," will we engage in the next inquiry and "compare the sentence to those imposed on other criminals in the same jurisdiction as well as those imposed for commission of the same crime in other jurisdictions." *Id.* ¶ 38.

[¶37.]    Here, Delehoy's sentence does not appear grossly disproportionate. He was convicted of kidnapping and simple assault but only challenges the sentence for kidnapping. Kidnapping—keeping someone against their will—is on the more serious end of the spectrum of criminality. SDCL 22-1-2(9). The Legislature authorizes a maximum of twenty-five years in prison for kidnapping, and Delehoy received a sentence of twenty-two years in prison. *See* SDCL 22-6-1(5). A life or death sentence would be at the end of the spectrum of possible punishments, and in our view, Delehoy's term of years was not excessive; thus, our review ends.

[¶38.]    Affirmed.

#28682

[¶39.]	GILBERTSON, Chief Justice, and KERN, JENSEN, and SALTER,

Justices, concur.