#29978-r-PJD
**2024 S.D. 14**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

   v.

TASHINA ABRAHAM-MEDVED,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
ROBERTS COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JON S. FLEMMER
Judge

\* \* \* \*

DAVID A. GEYER of
Delaney, Nielsen & Sannes, P.C.
Sisseton, South Dakota                    Attorneys for appellant.


MARTY J. JACKLEY
Attorney General

MATTHEW W. TEMPLAR
Assistant Attorney General
Pierre, South Dakota                      Attorneys for appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
MAY 23, 2023
OPINION FILED **03/06/24**

DEVANEY, Justice

[¶1.]    In this appeal, the defendant claims the circuit court abused its discretion when it denied her attorney's motion to withdraw without allowing her or her attorney an opportunity to establish good cause for the request. We conclude that the circuit court erred and the defendant has been prejudiced. We therefore reverse and remand for a new sentencing hearing.

## Factual and Procedural Background

[¶2.]    On August 25, 2021, Tashina Abraham-Medved was charged by complaint with one count of unauthorized ingestion of a schedule I or II controlled substance in violation of SDCL 22-42-5.1. She is from Minnesota, and at the time she was charged in South Dakota, she was under the supervision of the Minnesota Department of Corrections (Minnesota DOC). She requested and received court-appointed counsel in the South Dakota matter and, through counsel, obtained an order granting her a three-day furlough to attend medical appointments in Fargo, North Dakota.

[¶3.]    On September 16, 2021, the State filed an information charging Abraham-Medved with the same offense listed in the complaint. At her arraignment, she entered a guilty plea to the charge pursuant to a plea agreement. The record does not contain a transcript of this hearing; however, according to the State, in exchange for her guilty plea, the State agreed to dismiss three unrelated charges, including one from 2015. The parties were free to argue at sentencing, and the terms of the sentence were left to the circuit court's discretion. After accepting Abraham-Medved's plea, the court ordered the completion of a presentence

investigation report (PSI), set a date for the sentencing hearing on October 21, 2021, and released her on bond pending sentencing.

[¶4.] While on release, Abraham-Medved failed to attend her interview for the PSI. She also did not appear for sentencing, so the circuit court issued a bench warrant. In April 2022, she was arrested on this warrant and appeared at her sentencing hearing on April 28 with her court-appointed counsel, Robert Doody. At the beginning of the hearing, Doody requested to "be removed from this case" because of "a serious breakdown of communication between" him and Abraham-Medved. The State opposed the request, noting that "[t]he only thing left in this matter is for Miss Abraham Medved to be sentenced." The State further noted that Abraham-Medved had pled guilty pursuant to a plea agreement in September 2021 and "[s]entencing was to be left open with a PSI that was ordered back on September 16th." The State asked the court to "just close up the matter today[.]"

[¶5.] The circuit court did not inquire of either Abraham-Medved or Doody as to the nature of the breakdown in communication. Rather, the court denied Doody's request to withdraw, explaining, "I think that since the matter is set for sentencing I'm not sure what communication there is left to do." Thereafter, the court asked Abraham-Medved whether there was "anything that [she] wanted to say on [her] own behalf before sentencing[,]" and she provided several requests for the court's consideration.

[¶6.] During her statements to the circuit court, Abraham-Medved asked the court to sentence her to treatment, which the court indicated it could not do. She then requested a probationary sentence. She also requested that the court order

her South Dakota sentence to run concurrent with her Minnesota sentence. The court then asked Doody for his comments, and he replied, "I believe my client is requesting a suspended execution of sentence at this point. There was a PSI ordered but never completed in this case file." He did not offer any further information or argument.

[¶7.] The State argued for a five-year penitentiary sentence with two years suspended. The State claimed that Abraham-Medved did not appear for court hearings during the pendency of her cases (seemingly referring to cases other than the one at issue) and that at the time of the offense, she was under the supervision of the Minnesota DOC. The State also noted that she had a current warrant for her arrest issued by the Minnesota DOC. In the State's view, departing from presumptive probation was warranted because of her past conduct, including failing to show up for her interview for the PSI in the current matter and failing to appear for the initially scheduled sentencing hearing.

[¶8.] The circuit court commented on Abraham-Medved's failure to stay in contact with her counsel and with court services to complete the PSI. The court reasoned that her failure to stay in contact with counsel and court services "appears" to be "part of the problem that caused Mr. Doody to request to be allowed to withdraw at this point[.]" In regard to an appropriate sentence, the court noted that Abraham-Medved was presumptively entitled to a sentence of probation because the offense to which she pled guilty is a Class 5 felony. However, the court determined that the circumstances warranted departure from presumptive probation because she committed the current felony offense while under the

supervision of the Minnesota DOC, she did not attend her PSI interview or appear at the sentencing hearing on October 21, and she did not stay in contact with her court services officer or her attorney. For these reasons, the court noted that she was not a good candidate for community supervision.

[¶9.] The court sentenced Abraham-Medved to five years in the penitentiary with two years suspended on the conditions that she pay costs, including reimbursement for her attorney fees, and that she follow the rules set by DOC. The court gave her credit for time served and also recommended "that [she] be allowed to participate in [an] alcohol and chemical dependency evaluation, treatment and aftercare while under [DOC] supervision." Finally, the court ordered that her sentence run concurrent to any sentences she may have to serve in Minnesota or to any other sentences that may be imposed in South Dakota.

[¶10.] The circuit court asked Doody whether he had any questions, and he responded that he did not. The court then asked Abraham-Medved if she had any questions, and she asked whether she would be going back to Minnesota and if she was "done with the sentence here[.]" The court told her she would be going to the women's prison in Pierre, and they would decide where and when she would go from there. She also asked about when she was eligible for parole, and the court clarified the percentage of time she would be required to serve. Abraham-Medved then requested a furlough before going to prison so she could move out of her college dormitory. The State opposed her request in light of the court's sentence and her motivation to abscond. The court denied the furlough request.

[¶11.]     Abraham-Medved appeals, asserting that the circuit court abused its discretion in denying Doody's motion to withdraw.

## Standard of Review

[¶12.]     This Court reviews a denial of defense counsel's motion to withdraw for an abuse of discretion. *State v. Loftus*, 1997 S.D. 94, ¶ 13, 566 N.W.2d 825, 827 (citing *State v. Iron Necklace*, 430 N.W.2d 66, 79, (S.D. 1988)); *State v. Martinez*, 2016 S.D. 49, ¶ 15, 882 N.W.2d 731, 735.  In regard to this standard of review, the State requests that we "definitively clarify" what definition of "abuse of discretion" applies.  In the State's view, the Court has used different definitions since stating in *State v. Delehoy* that "[t]he correct statement of review is as follows: An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.'" 2019 S.D. 30, ¶ 22, 929 N.W.2d 103, 109 (quoting *Thurman v. CUNA Mut'l Ins. Soc'y*, 2013 S.D. 63, ¶ 11, 836 N.W.2d 611, 616).  The State notes that in most cases decided after *Delehoy*, an abuse of discretion was defined consistent with *Delehoy* (i.e., fundamental error of judgment), but in some, the Court stated that "[a]n abuse of discretion occurs when the circuit court exercises its discretion to an end or purpose not justified by, and clearly against reason and evidence[,]" *see, e.g.*, *State v. Reeves*, 2021 S.D. 64, ¶ 11, 967 N.W.2d 144, 147 (citation omitted).

[¶13.]     While the Court in *Delehoy* did clarify the proper inquiry when an abuse of discretion standard of review is implicated, we did so because the parties in *Delehoy* and in past cases were continuing to use language previously abandoned by

this Court that related an inaccurate and inapplicable definition of an abuse of discretion, namely "whether a judicial mind, considering the law and facts, could have reached a similar decision." *See* 2019 S.D. 30, ¶¶ 21–22, 929 N.W.2d at 108–09 (citation and internal quotation marks omitted) (directing the parties to no longer use this definition for an abuse of discretion). There is nothing inaccurate or unclear about the two statements highlighted by the State and used in this Court's decisions post-*Delehoy*. It is an abuse of discretion for a circuit court to make "a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable[,]" *id.* ¶ 22, 929 N.W.2d at 109, and it is an abuse of discretion for the court to exercise its discretion "to an end or purpose not justified by, and clearly against reason and evidence," *Reeves*, 2021 S.D. 64, ¶ 11, 967 N.W.2d at 147. These statements are essentially two different iterations of the same concept; the latter is geared more toward reviewing a ruling dependent on the evidence in a particular record. Importantly, not all decisions this Court reviews for an abuse of discretion are of the same nature. As the Court noted in *Thurman*, what constitutes an "'abuse of discretion' defies an easy description." 2013 S.D. 63, ¶ 11, 836 N.W.2d at 616 (quoting *State v. Lemler*, 2009 S.D. 86, ¶ 40, 774 N.W.2d 272, 286).

## Analysis and Decision

[¶14.] Abraham-Medved claims that the circuit court abused its discretion in denying Doody's request to be removed as counsel without first allowing her or Doody "to explain the circumstances of the request." She acknowledges that she was required to establish good cause for the appointment of substitute counsel, but

she asserts that this Court's past cases require circuit courts to give those making such requests a full and fair opportunity to present good cause to justify a change in counsel.

[¶15.] In response, the State claims that the circuit court did not abuse its discretion because Doody only alleged a breakdown in communication, not a breakdown in the attorney-client relationship. The State further asserts that no error occurred because Doody's request was untimely and would have been disruptive to the judicial process because another delay would have ensued to allow a new attorney to become familiar with the case.[1]

[¶16.] In *Iron Necklace*, this Court adopted the view from Michigan authorities that "[a]ppointment of substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." 430 N.W.2d at 79 (quoting *People v. Johnson*, 373 N.W.2d 263, 268 (Mich. Ct. App. 1985)). The defendant has the burden of establishing good cause. *State v. Fender*, 484 N.W.2d 307, 309 (S.D. 1992).

[¶17.] While the circuit court has discretion in deciding whether to grant a request for substitute counsel, the Court in *Fender* "defined the scope of the trial court's responsibility to inquire as to the defendant's reason for seeking a change in

---

1. Alternatively, the State claims that even if a breakdown in communication would be sufficient to warrant a change of counsel, Abraham-Medved caused the breakdown in communication by absconding and thus was not entitled to substitute counsel. Because the circuit court did not make any inquiry as to the basis of Doody's request, we do not have an adequate record or factual basis to address this claim. For this same reason, we cannot review the State's claim that any further delay would have unreasonably disrupted the judicial process.

counsel." *Id.* Quoting language from the California Supreme Court, we agreed that "the trial court cannot thoughtfully exercise its discretion in this matter without listening to [the defendant's] reasons for requesting a change of attorneys." *Id.* (quoting *People v. Marsden*, 465 P.2d 44, 47 (Cal. 1970)). Further, "[a] trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys unless [the judge] is cognizant of the grounds which prompted the request." *Id.* (quoting *Marsden*, 465 P.2d at 47). In subsequent cases, this Court has interpreted *Fender* to mean "that a defendant must be given an opportunity to 'present his "good cause" justifying a change in counsel.'" *State v. Talarico*, 2003 S.D. 41, ¶ 23, 661 N.W.2d 11, 20 (quoting *Fender*, 484 N.W.2d at 309); *State v. Irvine*, 1996 S.D. 43, ¶ 10, 547 N.W.2d 177, 180 (examining whether defendant "was afforded a full and fair opportunity to establish [the] reasons for seeking different counsel"); *Martinez*, 2016 S.D. 49, ¶ 18, 882 N.W.2d at 736 (same).

[¶18.] These prior decisions establish the procedure a circuit court is to follow when ruling on a motion for substitute counsel. These decisions further reveal that contrary to the State's argument, neither counsel nor Abraham-Medved were required to assert *both* a destruction in communication *and* a breakdown in the attorney-client relationship before the court was required to make an inquiry and allow them to make a good-cause showing. Rather, the language the State quotes from these cases simply reflects various circumstances under which a request for substitute counsel has been made, thus invoking the court's duty to inquire further. For example, in *Fender,* the Court quoted a Michigan appellate court's statement that "when [a] defendant alleges the existence of a dispute leading to a destruction

of communication and a breakdown in the attorney-client relationship, the judge is obligated to inquire whether such allegations are true." 484 N.W.2d at 309 (alteration in original) (quoting *People v. Bass*, 279 N.W.2d 551 (Mich. Ct. App. 1979)). The Court in *Fender* also quoted the Michigan Supreme Court's statement that "[w]hen a defendant asserts that his assigned lawyer is not adequate or diligent or asserts . . . that his lawyer is disinterested, the judge should hear his claim and, if there is a factual dispute, take testimony and state his findings and conclusion." *Id.* (quoting *People v. Ginther*, 212 N.W.2d 922, 924 (Mich. 1973)). And in *Irvine*, this Court considered whether the defendant or counsel had "made any showing of an irreconcilable dispute regarding strategy or defense." 1996 S.D. 43, ¶ 15, 547 N.W.2d at 181.

[¶19.] While the circumstances described in our past cases reflect grounds under which substitute counsel might be requested and which may constitute good cause for granting a request, it is clear that when there is a request for substitute counsel, the circuit court must at least inquire as to the reasons. Here, it is undisputed that although the circuit court had before it a request from Doody that he be permitted to withdraw because of a serious breakdown in communications, the court did not make any inquiry of Doody or Abraham-Medved to gain further insight before ruling on the request.

[¶20.] This Court ordinarily accords the circuit court broad discretion in considering a request for substitute counsel; however, the court cannot effectively exercise its discretion when ruling on a request to withdraw or for substitute counsel if it does not inquire about the reasons for such requests. *See Fender*, 484

N.W.2d at 309. Moreover, as this Court has previously explained, the court's discretion to deny a request is balanced "against the defendant's Sixth Amendment right to counsel." *Martinez,* 2016 S.D. 49, ¶ 18, 882 N.W.2d at 736. Thus, "a defendant must be given an opportunity to 'present his "good cause" justifying a change in counsel.'" *See Talarico*, 2003 S.D. 41, ¶ 23, 661 N.W.2d at 20 (citation omitted). Because the circuit court did not provide Doody or Abraham-Medved a full and fair opportunity to establish a factual basis for Doody's request to withdraw, the court abused its discretion in failing to follow this Court's procedure for ruling on such a request. *See Delehoy*, 2019 S.D. 30, ¶ 22, 929 N.W.2d at 109 (providing that a fundamental error of judgment is an abuse of discretion).

[¶21.] However, the State contends the circuit court's error does not necessitate reversal and remand because Abraham-Medved has failed to show prejudice, namely that it is likely "she would have received a more favorable sentence had she been represented by an attorney other than Mr. Doody." In response, Abraham-Medved claims she was prejudiced because Doody "did not display a thorough knowledge of the record[,]" and his "insufficient representation at sentencing caused [her] to be denied her requests for furlough, probation, and rehabilitation." In her view, she was, like the defendant in *Martinez*, "left to fend for [herself] at sentencing." *See* 2016 S.D. 49, ¶ 18, 882 N.W.2d at 736.

[¶22.] In *Martinez*, defense counsel did not appear at a continued sentencing hearing, and Martinez sent a letter to the circuit court requesting a new attorney based on his claim that he was not being adequately represented. *Id.* ¶ 16. Although Martinez's letter identified specific examples supporting his claim that

counsel was inadequately representing him related to sentencing, the court did not rule on Martinez's request. When the sentencing hearing was finally held, defense counsel requested a continuance because she did not have adequate time to prepare. The court denied the request, after which defense counsel requested to be discharged, advising the "court that she was not in a position to proceed on Martinez's sentencing[,]" was "not willing to put [her] ethical obligations to Mr. Martinez aside[,]" and was "not physically and medically able to perform today." *Id.* ¶ 17, 882 N.W.2d at 735–36. The court denied the request.

[¶23.] On appeal, we determined that "[t]here is no question here that Martinez was left to fend for himself at sentencing. Counsel informed the court that she was physically and mentally unable to perform." *Id.* ¶ 18, 882 N.W.2d at 736. We further concluded that remand for a hearing on Martinez's motion for a change of counsel was unnecessary "because the facts are undisputed and establish good cause to appoint new counsel." *Id.* ¶ 19. We then reversed Martinez's sentence and remanded for the circuit court to appoint new counsel and hold a new sentencing hearing. *Id.* We did not, however, specifically state that Martinez was prejudiced by the court's error in failing to appoint substitute counsel.[2]

---

2. Although the Court in *Martinez* did not expressly refer to prejudice when reversing and remanding, in a footnote addressing the circuit court's denial of defense counsel's motion for a continuance to adequately prepare for the sentencing hearing, the Court identified circumstances relating to the prejudicial nature of the court's decision not to appoint substitute counsel. 2016 S.D. 49, ¶ 18 n.2, 882 N.W.2d at 736 n.2. In particular, the Court referred to defense counsel's statement at the sentencing hearing that the circuit court did not have a completed PSI and that counsel was waiting to hear back from two psychological experts. *Id.*

[¶24.]     Nevertheless, it is well settled that under the abuse of discretion standard of review, this Court will not overturn an error "unless that 'error is demonstrated and shown to be prejudicial[.]'" *State v. Mitchell*, 2021 S.D. 46, ¶ 27, 963 N.W.2d 326, 332 (quoting *State v. Klinetobe*, 2021 S.D. 24, ¶ 26, 958 N.W.2d 734, 740). In cases regarding an error in failing to appoint substitute counsel, courts have explained that the defendant must "demonstrate that, in the context of the sentencing hearing, he was somehow prejudiced by trial counsel continuing to represent him."[3] *United States v. Calderon*, 127 F.3d 1314, 1343 (11th Cir. 1997); *see also United States v. Graham*, 91 F.3d 213, 221–22 (D.C. Cir. 1996); *United States v. Zillges*, 978 F.2d 369, 372–73 (7th Cir. 1992). To establish prejudice in this context, the defendant "must show that counsel's performance was 'not within the range of competence demanded of attorneys in criminal cases'" and that there is a reasonable probability that, but for the counsel's deficiencies, "the result of the proceeding would have been different." *Calderon*, 127 F.3d at 1343 (quoting *Zillges*, 978 F.2d at 372–73).

[¶25.]     Under the unique circumstances here, like in *Martinez*, it is evident that Doody's performance at the sentencing hearing "'fell below an objective

---

3.     Abraham-Medved has not asserted that the circuit court committed a structural error in denying her attorney's motion to withdraw such that no showing of prejudice is required. *See Guthmiller v. Weber*, 2011 S.D. 62, ¶ 16, 804 N.W.2d 400, 406 (recognizing that the United States Supreme Court has identified the depravation of the right to counsel as a structural error that requires reversal without a showing of prejudice); *see also Neder v. United States*, 527 U.S. 1, 9, 119 S. Ct. 1827, 1833, 144 L. Ed. 2d 35 (1999) (providing that it is "the *complete* depravation of counsel" that constitutes a structural error (emphasis added)).

standard of reasonableness.'"[4] *McDonough v. Weber*, 2015 S.D. 1, ¶ 22, 859 N.W.2d 26, 37. After the circuit court denied Doody's request, he did not present any sentencing recommendation or argument. Instead, Abraham-Medved spoke on her own behalf after being invited to do so by the circuit court. During her remarks, she requested that her sentence be ordered to run concurrently with the sentence associated with her Minnesota DOC warrant. She acknowledged that she had missed some court hearings; however, she explained that she was "aware that the [c]ourt knows . . . that [she] was in a major car accident" and that she was in the hospital for three and a half months.[5] She asked the court to take that into consideration. She further advised the court that she is in college full-time at the Sisseton Wahpeton College and asked if she could complete her sentence "here" while being released during the day to attend school.

---

4. Here, we are considering defense counsel's performance in our effort to assess the impact of the circuit court's error and not as part of a direct challenge alleging ineffective assistance of counsel under the Sixth Amendment. But that distinction does not affect the standard we use or negate the need for a sufficient record on which we can conduct meaningful review. For this reason, "we have stated that '[a]bsent exceptional circumstances, we will not address an ineffective assistance claim on direct appeal. We depart from this principle only when trial counsel was so ineffective and counsel's representation so casual as to represent a manifest usurpation of the defendant's constitutional rights.'" *State v. Vortherms*, 2020 S.D. 67, ¶ 30, 952 N.W.2d 113, 120–21 (alteration in original) (quoting *State v. Golliher-Weyer*, 2016 S.D. 10, ¶ 8, 875 N.W.2d 28, 31). This case represents one of those exceptional circumstances where counsel's ineffective representation is manifest on this record.

5. Without a PSI or other information in the record, the timing and circumstances regarding Abraham-Medved's car accident and hospitalization cannot be further assessed. However, we note that neither the circuit court nor the State took issue with her representations regarding what had occurred.

[¶26.] The State—not Doody—then chimed in and advised the circuit court that "[a] stay of imposition" is "a thing they do in Minnesota." The court told Abraham-Medved that a stay of imposition was not an option and that the court would either impose a sentence of probation and jail time or a penitentiary sentence. Abraham-Medved then requested to be sentenced to probation with a 60-day sentence, of which she believed she had 20 days left to serve. She also asked that she be allowed to go to treatment. The court explained that it could not sentence her to a treatment program; however, the court further stated, "[I]f you were in a situation where you were in the county jail and [the treatment provider] would accept you for treatment, those arrangements might be able to be made" and "[i]f you had gotten treatment there it's something that the [c]ourt can take into account or give you credit for toward a sentence."

[¶27.] After Abraham-Medved concluded her sentencing argument, the circuit court asked Doody whether he had anything to share. Rather than presenting a sentencing argument on behalf of his client, he provided the following cursory statements, neither of which was particularly helpful for his client: "I believe my client is requesting a suspended execution of sentence at this point. There was a PSI ordered but never completed in this case file."[6] Despite the court's

---

6. The circuit court had ordered a PSI report to be conducted at the time of Abraham-Medved's guilty plea on October 21, 2021. There is nothing in the record indicating she waived the PSI report, that the court deemed it waived, or that the court found there to be sufficient evidence in the record to proceed with sentencing. *See* SDCL 23A-27-5 ("A presentence investigation may be ordered in the discretion of a court. The court services officer of a court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless, with the

(continued . . .)

comments regarding treatment alternatives, Doody did not request additional time to complete a PSI or to obtain a current treatment needs assessment and explore possible treatment options. He also failed to, at the very least, argue how the relevant mitigating facts she identified warranted a lesser sentence than that requested by the State. This complete lack of engagement suggests there was no communication between Doody and Abraham-Medved to address the immediacy of sentencing or develop mitigating circumstances for the circuit court's consideration at sentencing.

[¶28.] This is problematic, considering that the sentencing transcript does not reveal that the circuit court was averse to all of Abraham-Medved's requests. To the contrary, the court's remarks indicated a willingness to consider treatment as an alternative or as a credit towards a sentence, had those arrangements been made or presented as a viable option. Notably, the court's sentence hinged primarily on its view, a view not confirmed via a colloquy with Doody or Abraham-Medved, that Abraham-Medved failed to keep in contact with counsel.

[¶29.] When examining the prejudicial impact of counsel's deficient performance, we have said that a "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *State v. Thomas*, 2011 S.D. 15,

_____

(. . . continued)

permission of the court, the defendant waives a presentence investigation and report, or the court finds there is in the record information sufficient to enable the meaningful exercise of sentencing discretion, and the court explains this finding on the record."). Notably, the record here is very sparse, particularly with regard to any treatment history or needs, the other charges that were purportedly dismissed, the Minnesota felony and sentence for which Abraham-Medved was being supervised, and the current status of her parole.

¶ 28, 796 N.W.2d 706, 715 (citation omitted).  Here, in light of the court's comments and Doody's deficient performance, which left Abraham-Medved to fend for herself, we cannot on this record say, with confidence, that the court would have imposed the same sentence had there been some advocacy on her behalf.  Rather, we conclude that, but for Doody's deficient performance, there is a reasonable probability that Abraham-Medved would have received a different sentence.  We thus reverse Abraham-Medved's sentence and remand for the circuit court to hold a new sentencing hearing.[7]

[¶30.]     Reversed and remanded.

[¶31.]     JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.

---

7.     It is not necessary to direct the circuit court to have a hearing on whether there is good cause to allow Doody to withdraw given subsequent events. After Doody filed the notice of appeal in this matter, Abraham-Medved sent an email indicating her desire to appeal the matter on her own because she did not want Doody to represent her.  Doody then filed a motion to withdraw based on Abraham-Medved's letter.  The circuit court granted the request via a written order in May 2022.  In October 2022, Abraham-Medved requested the assistance of court-appointed counsel, and the circuit court granted her request.